United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.S. TREASURE CONTACTS, LTD., | Case No.  25-cv-08689-JSC |
| Plaintiff, | **ORDER RE: MOTION TO DISMISS** |
| v. | Re: Dkt. No. 26 |
| SIGNAL MESSENGER, LLC, | |
| Defendant. | |

H.S. Treasure Contacts, Ltd. ("HSTC") sues Signal Messenger, LLC ("Signal") for infringement of U.S. Patent No. 8,655,341 ("the '341 patent").  (Dkt. No. 22.)[1]  Signal moves to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).  (Dkt. No. 26.) All owners of the '341 patent are not plaintiffs in this litigation and HSTC does not allege facts supporting a plausible inference: (a) it was granted a license from each co-owner, or (b) co-owners waived the right to refuse to join this suit.  Therefore, the Court DISMISSES HSTC's First Amended Complaint ("FAC") with leave to amend.

**BACKGROUND**

**I.      THE '341 PATENT**

The '341 patent is titled "Methods for Mobile Phone Applications."  '341 patent, (Dkt. No. 22-1.)  The '341 patent relates to methods for software distribution for mobile phones.  *Id.*, Field of the Invention.  In particular, the '341 patent relates to systems and methods for viral distribution of mobile device applications (software, games, content, etc.) by use of contact lists, phone book, or other social network information.  *Id.*  The abstract summarizes the patent as follows:

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

> A set of systems and methods are described that: a) provides methods for viral mass distribution of mobile phone applications by use of phone book, contact lists, or other social network information, b) enable any Internet-enabled mobile device user to download and use such mobile applications without requiring PC access, and c) provides a technique for unifying code versions for most existing mobile devices, expediting the viral distribution of said applications.

*Id.*, Abstract.  The United States Patent and Trademark Office ("USPTO") issued the '341 patent on February 18, 2014.  *Id.*, (45).

## II.     COMPLAINT ALLEGATIONS

Haim Boukai and Sergey Ost "filed a patent application for their invention," and their inventive system was granted as the '341 patent.  (Dkt. No. 22 ¶¶ 10, 13.)  HSTC is:

> the exclusive owner by license from co-owners Haim Boukai and Sergy [sic] Ost of a full and complete and comprehensive exclusive license, even to the exclusion of the co-owners in all right, title, and interest in U.S. Patent 8,655,341 including the right to make, use, sell, offer to sell, assert, enforce, and sub-license, including all past, present and future rights to collect damages, without limitation, except as to the right to receive proceeds from any litigation or enforcement of the '341 Patent.

(*Id.* ¶ 14.)  Although Mr. Boukai and Mr. Ost are named inventors and retain co-ownership of the '341 Patent, they "have no rights in decision-making nor participation in any enforcement."  (*Id.* ¶ 15.)

Signal infringes one or more claims of the '341 patent.  (*Id.* ¶ 1.)  The Signal Messenger application's "Invite Friends" feature, which invites non-Signal users to download and install the application through viral distribution, directly infringes the '341 patent.  (*Id.* ¶¶ 23, 29.)  Signal also contributorily infringes the '341 patent.  (*Id.* ¶ 25.)

## III.     LICENSE AGREEMENTS

HSTC alleges it has a license from Mr. Boukai and Mr. Ost, but does not allege when the license was executed.  HSTC did not attach any license agreement to its FAC.  Signal attached two agreements to its motion to dismiss: (1) an exclusive license agreement to the '341 patent executed on or after October 30, 2025 ("October license"); and (2) a *nunc pro tunc* addendum executed on December 29, 2025 ("December addendum").  (Dkt. No. 27-4).  In its opposition, HSTC argues "[o]n March 31, 2025, all substantial rights to U.S. Patent No. 8,655,341 were transferred to [HSTC] via written instrument ('Agreement')."  (Dkt. No. 31 ¶ 1.)  HSTC also recorded said

United States District Court
Northern District of California

2

"Agreement" with the USPTO on December 29, 2025.  (Dkt. No. 31 ¶ 2; 31-1 at 3-4.)[2]  HSTC attached the October license and December addendum to its opposition, but never produced the "Agreement" from March, nor made any factual allegations regarding its substance.  (Dkt. No. 31-1.)

The October license agreement states "Haim Boukai has 'Patent Management and control over the monetization campaign' by Agreement of the co-owners of US Patent 8,655,341, dated October 30, 2023," but HSTC did not produce the co-owners' agreement nor allege its contents.  (Dkt. No. 31-1 at 1.)  The October license agreement transfers "complete rights to the granting of sub-licenses to the exclusion of any and all owners, and retaining for the co-owners only the naked right to receive proceeds."  (*Id.*)  The October license states:

> [HSTC] is hereby granted an irrevokable [sic], full and complete and comprehensive exclusive license, even to the exclusion of the co-owners, in and to all right, title and interest in the assertion, sub-licensing, and enforcement of U.S. Patent 8,655,341 , including all past, present and future rights to collect damages.

(*Id.*)  "The naked right to receive proceeds from litigation is the sole right reserved by co-owners." (*Id.*)  The October license is executed by Mr. Boukai both as "Grantor as Authorized by co-owners" and "for: H.S. Treasure Contacts Licensee."  (*Id.*)  Mr. Ost did not execute the October license.

The December addendum states the exclusive license is "effective as of the March 31, 2025 date of the original Agreement between Haim Boukai (as authorized by the co-owners of U.S. Patent 8,655,341) and [HSTC]."  (*Id.* at 2.)  As explained above, HSTC has not produced this purported "original Agreement."  The addendum states "the Agreement conveyed all right, title, and interest in" the '341 patent to HSTC, "except the single right to receive payment explicitly reserved in the Agreement."  (*Id.*)  The addendum states:

> [HSTC] is and was granted an irrevocable, full and complete and comprehensive exclusive license, even to the exclusion of the co-owners, in and to all right, title and interest in U.S. Patent 8,655,341, without limitation, including the right to

---

[2] "The recording of an assignment with the PTO is not a determination as to the validity of the assignment. However, we think that it creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment."  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010) (citations omitted).

> make, use, sell, offer to sell, assert, enforce, sub-licensing, including all past, present and future rights to collect damages, without limitation, except as to the right to receive proceeds from any litigation or enforcement of the '341 Patent, which is the only right reserved to the co-owners Haim Boukai and Sergy [sic] Ost. The co-owners having no right in nor participation nor decision making capacity in any litigation or enforcement or any other aspect of the '341 Patent.

(*Id.*)  Again, the addendum is executed by Mr. Boukai both as "Grantor as Authorized by co-owners" and "for: H.S. Treasure Contacts Licensee."  (*Id.*)  Mr. Ost did not execute the addendum.

## IV.    PROCEDURAL BACKGROUND

On October 9, 2025, HSTC sued Signal for infringing the '341 patent, and Signal moved to dismiss.  (Dkt. Nos. 1, 19.)  On December 29, 2025, HSTC filed its FAC alleging Signal's direct and contributory infringement of the '341 patent.  (Dkt. No. 22.)  Signal now moves to dismiss HSTC's FAC.  (Dkt. No. 26.)

## DISCUSSION

Signal moves to dismiss on the grounds: (1) HSTC lacks standing and fails to join all necessary parties as plaintiffs, (2) HSTC's asserted patent claims are directed to non-patentable subject matter under 35 U.S.C. § 101, (3) HSTC's asserted patent Claims 10-18 are indefinite under 35 U.S.C. § 112, and (4) HSTC fails to state a claim for direct or contributory infringement. (*Id.* at 9-10.)  Signal argues HSTC lacks standing because HSTC's exclusive license was executed by only one out of two joint owners, and even then, only after this lawsuit was filed.  (*Id.* at 18.)  It also argues HSTC lacks standing because the co-inventors Mr. Boukai and Mr. Ost must be joined as plaintiffs.  (*Id.* at 15.)  In opposition HSTC insists its exclusive license grants it "all substantial rights" in the '341 patent sufficient to allow it to sue in its own name under 35 U.S.C. § 281. (Dkt. No. 31 at 7-9.)

Signal appears to argue HSTC lacks constitutional standing under Article III, lacks statutory standing under § 281, and failed to join a co-owner as a plaintiff under 35 U.S.C. § 262. (Dkt. No. 26 at 16-17 (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467-68 (Fed. Cir. 1998) (citing 35 U.S.C. § 262); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (2005) (citing Article III); *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016) (citing 35 U.S.C. § 281).)  There is a "jurisdictional and substantive distinction" between the injury-in-fact requirement of Article III and § 281 statutory standing respectively.

4

*Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 568 (2024). Article III injury-in-fact and § 281 should not be "improperly melded" in a combined analysis. *Id.* Like, §281, the joinder of all patent co-owners as plaintiffs under § 262 is also substantive, "not jurisdictional in nature." *See AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378 (Fed. Cir. 2020); *see also STC.UNM v. Intel Corp.*, 754 F.3d 940, 944 (Fed. Cir. 2014) ("as a matter of *substantive* patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit") (emphasis added) (quoting *Ethicon*, 135 F.3d at 1468). Because Article III is jurisdictional and §§ 281 and 262 are substantive, this Order addresses these issues separately.

## I.      ARTICLE III STANDING

### A.      Legal Standard

Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (citations omitted). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan*, 504 U.S at 560-61); *see also Lujan*, 504 U.S. at 561 (explaining as "[t]he party invoking federal jurisdiction," the plaintiff "bears the burden of establishing these elements"). For Article III injury-in-fact in a patent infringement case, "those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019).

Failure to join a co-owner of a patent "impacts [a plaintiff's] ability to satisfy the statutory prerequisites for bringing an infringement suit [under § 262]; it does not impact [the plaintiff's] Article III standing." *AntennaSys*, 976 F.3d at 1378 (citing *Lexmark International, Inc. v. Static Control Components Inc.*, 572 U.S. 118, 128 n.4 (2014)). So, a plaintiff can have Article III standing even if it lacks the ability sue in its own name under § 281. *See Lone Star*, 925 F.3d

United States District Court
Northern District of California

1225, 1234-35 (citing *Lexmark*, 572 U.S. at 128 n.4) (rejecting the argument the plaintiff lacked Article III standing because the plaintiff lacked "all substantial rights" allowing it to sue in its own name under § 281); *see also id.* at 1234, 1236 (concluding the plaintiff "cannot assert these patents in its own name under § 281," but "its allegations still satisfy Article III").  This discrepancy occurs because the scope of "all substantial rights" necessary for a plaintiff to sue in its own name under § 281 is greater than "exclusionary rights" sufficient to establish Article III injury-in-fact.

"'Exclusionary rights' involve the ability to exclude others from practicing an invention or to 'forgive activities that would normally be prohibited under the patent statutes.'"  *Lone Star*, 925 F.3d at 1234.  A licensee has "exclusionary rights" when he has an exclusive right to make, use, and sell the patented invention—at least within a particular field—and the right to grant licenses, even if those rights are subject to limitations.  *See, e.g.*, *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341 (Fed. Cir. 2007) (finding the licensee lacked "exclusionary rights" when it did not have "an exclusive license (right to make, use, or sell the patented invention) along with the […] the right to sublicense (subject to prior consent by [co-owner])") (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991)).

To have "all substantial rights" allowing a licensee to sue in its own name under § 281, a licensee must have an exclusive right to make, use, and sell the patented invention *and* the right to enforce and alienate (i.e., assign away) its interest in the patent without restrictions from the licensor.  *See Diamond Coating Techs.*, 823 F.3d at 619 ("[W]e have observed that (1) the exclusive right to make, use, and sell is vitally important and (2) the nature and scope of the patentee's retained right to sue accused infringers and license the patent are the most important factors in determining whether an agreement transfers sufficient rights to render the other party the owner of the patent.") (cleaned up) (citations omitted); *Lone Star*, 925 F.3d at 1230 (noting one with "all substantial patent rights" "would *never* need consent from the [licensor] to file suit" and "restriction[s] on alienation weigh[] in favor of finding a transfer of fewer than all substantial rights") (emphasis in original) (internal quotation marks omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.      HSTC has Exclusive Rights Sufficient to Satisfy Article III Standing**

"[F]or non-patent issues, such as whether a Rule 12(b)(1) motion should be treated as a facial or a factual challenge, [courts] apply the law of the regional circuit." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 139 F.4th 1340, 1347 (Fed. Cir. 2025) (quotation marks and citations omitted); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("[a] Rule 12(b)(1) jurisdictional attack may be facial or factual.") (citations omitted).  Signal attaches the license to its motion to make a factual 12(b)(1) attack.  (Dkt. Nos. 27-4; 32 at 6-8.)  "[I]n a factual attack, the challenger disputes the truth of the [plaintiff's] allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  Signal insists the license's plain language shows HSTC does not have Article III standing notwithstanding the FAC allegations.

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment . . . [and] need not presume the truthfulness of the plaintiff's allegations." *Id.* (citations omitted). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quotation marks and citations omitted).  "The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987).

**1.      Standing is Measured at the FAC's Filing**

As an initial matter, Signal argues HSTC lacks standing because it did not have an exclusive license at the time it filed suit: October 9, 2025.  (Dkt. No. 26 at 15, 18.)  The license attached to Signal's motion and HSTC's opposition was executed on or after October 30, 2025, and amended on December 29, 2025. (Dkt. No. 27-4; Dkt. No. 31-1.)  Signal argues Federal

7

Circuit precedent governs when HSTC must have standing, and under that precedent plaintiffs must have constitutional and statutory standing at all times during the lawsuit, including at commencement. (Dkt. No. 26 at (citing *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005)). The Court is unpersuaded.

"Non-patent issues"—i.e., "issues not unique to patent law"—are evaluated under "the law of the regional circuit." *Mitek*, 139 F.4th at 1347; *Exafer Ltd. v. Microsoft Corp.*, No. 2024-2296, 2026 WL 627886, at *2 (Fed. Cir. Mar. 6, 2026). The issue of whether supplemental pleadings can cure an initial standing defect is "not unique to patent law." [3] *See Exafer*, 2026 WL 627886, at *2. Indeed, a scenario factually similar to that here arose in *Northstar Financial Advisors Inc. v. Schwab Investments*, a non-patent case, where the Ninth Circuit allowed a plaintiff to cure a standing defect in a supplemental complaint by executing an assignment of rights after the initial filing of the suit. 779 F.3d 1036, 1044-47 (9th Cir. 2017) (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007). Therefore, the issue of whether supplemental pleadings can cure a standing defect is "not unique to patent law" and so is reviewed under regional circuit law. *See id.*; *Exafer Ltd.*, 2026 WL 627886, at *2.

Signal's reliance on *Sicom* is unavailing. *Sicom* does not hold Federal Circuit law governs whether a lack of Article III standing can be cured by an amended or supplemental complaint. To the contrary, *Sicom* cites to *Procter & Gamble Co. v. Paragon Trade Brands, Inc.,* 917 F.Supp. 305, 309–10 (D. Del. 1995)), to support its statement "[s]tanding must be present at the time the suit is brought." *Sicom*, 427 F.3d at 975-76. The District of Delaware sits in the Third Circuit, which has "never squarely addressed" whether standing defects may be cured with supplemental pleadings. *See Adams v. Carney*, No. CV 20-1680 (MN), 2022 WL 4448196, at *6 (D. Del. Sept. 23, 2022) (noting several cases starting in 2019 in which the Third Circuit implied standing defects could be cured through supplemental pleadings). Moreover, Article III standing was not at issue in *Sicom*—it involved statutory standing under § 281. *See Sicom*, 427 F.3d at 976 (citing 35

---

[3] If an amended complaint includes allegations regarding facts occurring after the first complaint, "technically, it is a supplemental complaint, not an 'amended complaint.'" *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008) (citing Fed. R. Civ. P. 15(d)).

United States District Court
Northern District of California

U.S.C. § 281). So, Ninth Circuit law governs the Article III standing temporality question.

In the Ninth Circuit, "the proper focus in determining jurisdiction are the facts existing at the time the complaint under consideration was filed." *Civ. Rts. Educ. & Enforcement Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1102 (9th Cir. 2017) (quoting *Northstar*, 779 F.3d at 1044). So, a plaintiff can cure a standing defect by filing a supplemental complaint alleging facts arising after the filing of the original complaint, including a post-filing assignment of rights. *See Northstar*, 779 F.3d at 1044. But even if Federal Circuit law governs, as Signal urges, "the proper focus in determining jurisdiction are 'the facts existing at the time the complaint *under consideration* was filed.'" *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008) (emphasis in original) (citing *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed.Cir.1996)). The Court thus considers whether HSTC had Article III standing as of the filing of the operative complaint: December 29, 2025. (Dkt. No. 22.) *See Northstar*, 779 F.3d at 1044; *Civ. Rts. Educ. & Enforcement Ctr.*, 867 F.3d at 1102; *Prasco*, 537 F.3d at 1337.

### 2. Factual Disputes May Not Be Resolved at This Stage

"Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). However, "a [j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air*, 373 F.3d at 1039 (quotation marks and citations omitted). So, if jurisdictional and substantive issues are intertwined, courts evaluate a 12(b)(1) motion "as [they] would a motion for summary judgment, and leave the resolution of material factual disputes" regarding Article III standing "to the trier of fact." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1145-46 (9th Cir. 2024) (quotation marks and citation omitted).

Jurisdictional and substantive issues are intertwined if "the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Bowen*, 118 F.4th at 1143 (citing *Safe Air*, 373 F.3d at 1039). Such intertwining exists, for example, when (1) "a party's

9

right to recover rests upon the interpretation of a federal statute that provides both the basis for the court's subject matter jurisdiction and the plaintiff's claim for relief"; (2) "the claim at issue arises under the Constitution"; or (3) a factual dispute material to jurisdiction is intertwined with an element of the plaintiff's claim. *Bowen*, 118 F.4th at 1143 (quotation marks and citations omitted).

Both the jurisdictional issue (whether HSTC has "exclusionary rights" sufficient to satisfy Article III) and the substantive issue (whether HSTC has § 281 statutory standing, explained in Section II *infra*) depend on the exclusive license agreement's scope. So, the Court evaluates Signal's 12(b)(1) motion as it would a summary judgment motion. *See Bowen*, 118 F.4th at 1145-46 (citing *Leite*, 749 F.3d at 1122).

### 3.    HSTC Has Shown it Has Article III Standing

The Federal Rules of Civil Procedure allow for summary judgment when the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are "facts that might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Signal argues HSTC lacks standing because (1) only Mr. Boukai and not Mr. Ost licensed rights in the '341 patent to HSTC, and (2) the exclusive license was not executed until after the filing of the initial complaint. (Dkt. No. 26 at 18.) To satisfy the injury-in-fact prong of Article III standing (1) HSTC must have "exclusionary rights" in the '341 patent, and (2) HSTC's rights in the '341 patent must be infringed. *Lone Star*, 925 F.3d at 1235 ("We have recognized that those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed.") Signal argues only Mr. Boukai executed the exclusive license agreement, implicating the "exclusionary rights" prong of injury-in-fact. (Dkt. No. 26 at 18). As explained above, Article III standing is determined at the time of the operative complaint, not the initial complaint, so Signal's

United States District Court
Northern District of California

latter argument fails. And Signal's objection that Mr. Ost did not license his rights in the '341 patent to HSTC, assuming true, does not mean HSTC lacks Article III standing.

Looking to the December addendum, at least Mr. Boukai granted HSTC an exclusive license on nearly all his rights in the '341 patent—including the right to make, use, sell, and sublicense the patented invention—to his own exclusion.  (Dkt. No. 27-4 at 2.)  Mr. Boukai retains only the right to litigation proceeds.  (*Id.*)  Because Mr. Boukai granted HSTC an exclusive license to make, use, and sell the patented invention and the right to sublicense,  HSTC has "exclusionary rights" sufficient to confer Article III standing.  *See Lone Star,* 925 F.3d at 1235 ("'exclusionary rights' involve the ability to exclude others from practicing an invention or to 'forgive activities that would normally be prohibited under the patent statutes.'") (citing *Morrow*, 499 F.3d at 1342). HSTC can have Article III standing even if it lacks the statutory prerequisites to sue under §§ 281 and 262 due to Mr. Ost not licensing his rights.  *See Lone Star*, 925 F.3d at 1234 (holding a licensee can have Article III standing to sue even if it lacks the ability to sue in its own name under § 281); *AntennaSys*, 976 F.3d at 1378 (holding failure to join a co-owner as a plaintiff impacts the "ability to satisfy the statutory prerequisites for bringing an infringement suit; it does not impact [a plaintiff's] Article III standing").

Signal argues HSTC's license is "inherently non-exclusive" because Mr. Ost is a joint owner and can still practice and license the invention.  (Dkt. No. 26 at 16-18.)  But there is no "bright-line rule that a party cannot be an exclusive licensee of a patent if others have the right to license the patent."  *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010).  "A licensee is an exclusive licensee of a patent if it holds *any*"—not all—"of the exclusionary rights that accompany a patent."  *Id.*; *see also Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1368 (Fed. Cir. 2008) ("To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention *within a given territory*, but also the patentee's express or implied promise that others shall be excluded from practicing the invention *within that territory* as well.") (emphasis added) (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995)).

In conclusion, to satisfy Article III, HSTC must have at least "exclusionary rights" in the '341 patent—i.e., the right to make, use, and sell the patented invention and the ability to grant sublicenses. *See Lone Star*, 925 F.3d at 1234; *Morrow*, 499 F.3d at 1341. The exclusive license agreement, even if executed only by Mr. Boukai, grants at least these "exclusionary rights" to HSTC. (Dkt. No. 27-4 at 2.) So, HSTC has met its burden of establishing Article III standing.

## II.    STATUTORY AUTHORITY TO SUE UNDER THE PATENT ACT

In addition to Article III standing, a patent infringement plaintiff must have statutory authority to bring suit under the Patent Act. Signal argues HSTC lacks statutory standing to sue for infringement because HSTC does not have "all substantial rights" in the '341 patent and because Mr. Boukai and Mr. Ost are not joined as plaintiffs.

### A.    The 12(b)(6) Standard of Review Applies

Whether HSTC meets the requirements to establish a statutory cause of action is a substantive inquiry, not jurisdictional, so the 12(b)(6) standard of review applies. *See Intell. Tech*, 101 F.4th at 814 (holding § 281 is a substantive inquiry); *Lone Star*, 925 F.3d at 1235 (holding § 281 is not a jurisdictional requirement); *see also Flow Devices & Sys., Inc. v. Pivotal Sys. Corp.*, 666 F. Supp. 3d 1024, 1028 (N.D. Cal. 2023) (explaining 12(b)(6) standard applies to § 281).

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). The facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). So, the complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.    HSTC Does Not Plausibly Allege it Has Statutory Authority to Sue for Infringement of the '341 Patent

Signal argues HSTC's license was only executed by Mr. Boukai and is therefore

12

"inherently nonexclusive." (Dkt. No. 26 at 16-18.)  Signal does not cite the statutes directly, but cites case law implicating two statutory requirements to bring an infringement action: (1) § 281, and (2) § 262.  (*Id.* at 17 (citing *Diamond Coating Techs.*, 823 F.3d at 618 (citing 35 U.S.C. § 281); *Ethicon*, 135 F.3d at 1467-68 (citing 35 U.S.C. § 262)).)  Section 281 and its associated case law address when a licensee can bring an infringement action under the Patent Act, either on its own or alongside the patentee.  35 U.S.C. § 281; *see, e.g.*, *Lone Star*, 925 F.3d 1225.  Section 262 addresses the right of joint owners to refuse to join a patent infringement action.  *See Ethicon*, 135 F.3d at 1468 (citing 35 U.S.C. § 262).

### 1.    HSTC's Allegations Do Not Support a Plausible Inference Mr. Ost Licensed His Rights in the '341 Patent

"When, as here, multiple inventors are listed on the face of the patent, each co-owner presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions." *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) (quotation marks and citations omitted).  In the FAC, HSTC alleges Mr. Boukai and Mr. Ost are the "named inventors of the '341 Patent" and they "retain co-ownership of the patent." (Dkt. No. 22 ¶ 15.)  *See also* '341 patent, (73, 75) (naming Mr. Boukai and Mr. Ost as the inventors and assignees of the '341 patent).

HSTC alleges it is "the exclusive owner by license from co-owners Haim Boukai and Sergy [sic] Ost."  (Dkt. No. 22 ¶ 14.)  But this is a legal conclusion not entitled to an assumption of truth rather than a factual allegation.  *See Iqbal*, 556 U.S. at 664 (noting legal conclusions are not entitled to an assumption of truth and must be supported by well-pleaded factual allegations); *see also Twombly*, 550 U.S. at 565-66 (holding the plaintiff's conclusory allegation of a contract between coconspirators, without more, was not sufficient to survive a 12(b)(6) motion).  There are no other allegations in the FAC about the execution of the license.  Therefore, the FAC's allegations do not support a plausible inference Mr. Boukai and Mr. Ost both licensed their rights in the '341 patent to HSTC.

The October license and December addendum also fail to support such an inference.  The October license and December addendum were executed by Mr. Boukai "[a]s authorized by co-

13

owners," but not executed by Mr. Ost. (Dkt. No. 27-1 at 1-2.) Assuming the reference to "co-owners" refers to Mr. Boukai and Mr. Ost, (Dkt. No. 22 ¶¶ 14-15), neither the FAC, the October license, the December addendum, nor anything else in the record establishes what Mr. Boukai is "authorized" to do on behalf of the "co-owners." The December addendum further states "Haim Boukai makes the following grant of Exclusive License" to HSTC, it does not state Haim Boukai **and** Sergey Ost grant those rights. (Dkt. No. 27-4 at 2.) Further, the December addendum states HSTC "is hereby granted . . . an exclusive license," but does not state the names of the purported licensors. (*Id.*) At the hearing HSTC insisted Mr. Boukai was authorized to license Mr. Ost's rights because the license states "Haim Boukai has 'Patent Management and control over the monetization campaign' by Agreement of the co-owners." (*Id.* at 1.) But HSTC has not produced the "Agreement of the co-owners." There are no allegations illuminating the substance of what the co-owners agreed to in that Patent Management agreement, let alone that it is sufficient to permit Mr. Boukai to license Mr. Ost's rights in the patent. [4]

So, the plain language of the October license and December addendum do not support a plausible inference Mr. Ost licensed his rights to HSTC. And to the extent the conclusory allegation of an exclusive license granted by both owners must be accepted as true (Dkt. No. 22 ¶ 14), because the October license and December addendum contradict the FAC, the October license and December addendum are controlling. *See In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) ("where a complaint incorrectly summarizes or characterizes a legally operative document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, the document itself is controlling"). [5] So, neither the FAC's allegations nor the

_____

[4] At the hearing, HSTC's counsel admitted he has never spoken to Mr. Ost.

[5] "Under the incorporation by reference doctrine, even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013). Although the October license and December addendum was not attached to HSTC's FAC, the license and addendum are incorporated by reference because they form the basis of HSTC's claim. *See id.* The parties do not appear to dispute the incorporation of the October license and December addendum into HSTC's FAC.

United States District Court
Northern District of California

October license and December addendum support a plausible inference Mr. Ost licensed his rights in the '341 patent to HSTC.

### 2.    Not All Joint Owners of the '341 Patent Are Co-Plaintiffs

35 U.S.C. § 262 outlines the rights of a patent's joint owners. "[W]hen a patent is co-owned, a co-owner seeking to enforce the patent must join all other coowners as plaintiffs[,]" and "all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *STC.UNM*, 754 F.3d at 944 (quoting *Ethicon*, 135 F.3d at 1468); *see also Ethicon*, 135 F.3d at 1467-68 ("An action for infringement must join as plaintiffs all co-owners.") (citations omitted). There are "two exceptions to this statutory requirement: (1) when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee and must permit the licensee to sue in his name; and (2) if, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers." *AntennaSys*, 976 F.3d at 1378 (citing *Ethicon*, 135 F.3d at 1468 n.9).

Because Mr. Boukai granted an exclusive license to HSTC, Mr. Boukai "stands in a relationship of trust" to HSTC and must permit HSTC to sue in his name. *See AntennaSys*, 976 F.3d at 1378. But as explained above, HSTC does not plausibly allege Mr. Ost granted it an exclusive license obligating Mr. Ost to permit HSTC to sue in Mr. Ost's name. Nor does HSTC plausibly allege Mr. Ost waived his right to refuse to join an infringement suit. *See id.* Therefore, HSTC does not allege facts supporting a plausible inference it meets the requirements of § 262. This defect is curable by voluntary joinder of Mr. Ost as a plaintiff. Alternatively, HSTC can sue in its own name alone if it amends its complaint or files a supplemental complaint that plausibly alleges either Mr. Ost exclusively licensed his rights to HSTC or Mr. Ost waived his right to refuse to join an infringement action.

### CONCLUSION

HSTC fails to plausibly allege Mr. Ost licensed his rights in the '341 patent to HSTC or waived his right to refuse to join the suit. The Court therefore GRANTS Signal's motion to dismiss. HSTC may cure its defect by (a) joinder Mr. Ost; (b) amending its complaint to allege facts supporting a plausible inference HSTC met the requirements of § 262 as of October 9, 2025;

United States District Court
Northern District of California

15

or (c) filing a supplemental complaint alleging facts supporting a plausible inference HSTC met the requirements of § 262 as of the time of filing of the operative complaint. [6]  Any amended or supplemental complaint must be filed by **April 20, 2026**.  Plaintiff may not add any new defendants or claims without further leave of Court.  The Court sets an initial case management conference for June 17, 2026, at 2:00 p.m. via Zoom video.  An updated joint case management conference statement is due one week in advance.

**IT IS SO ORDERED.**

Dated: March 30, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

---

[6] If HSTC can plausibly allege it met the requirements of §§ 262 and 281 before the initial filing date, then HSTC should file an "amended complaint."  Fed. R. Civ. P. 15(a).  Otherwise, HSTC should file a "supplemental complaint," because it will allege facts arising after the initial filing date.  Fed. R. Civ. P. 15(d).

16